**ORAL ARGUMENT NOT SCHEDULED**

No. 13-5080

𝕴𝖓 𝖙𝖍𝖊

# 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
## 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕮𝖔𝖑𝖚𝖒𝖇𝖎𝖆

Kim S. Westberg, husband; Laverne V. Westberg, wife,
Plaintiffs - Appellants

v.

Federal Deposit Insurance Corporation, as receiver for and on behalf of Silver
State Bank; Multibank 2009-1 RES-ADC Venture, LLC,
Defendants - Appellees

**On Appeal from the United States District Court
for the District of Columbia**

**BRIEF OF APPELLANTS**

**CHRISTOPHER ALAN LAVOY**
**TIFFANY & BOSCO, PA**
**2525 East Camelback Road**
**Phoenix, AZ 85016-9240**
**602-255-6000**
**cal@tblaw.com**

*Counsel for Appellants*

Becker Gallagher · Cincinnati, OH · Washington, D.C. · 800.890.5001

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

(A) **Parties and Amici:** Kim S. Westberg; Lavern V. Westberg; Federal Deposit Insurance Corporation, as receiver for and on behalf of Silver State Bank; and Multibank 2009-1 RES-ADC Venture, LLC.

(B)     **Ruling Under Review:** Amended Memorandum Opinion, by the Hon. Amy Berman Jackson, District Judge, dated February 26, 2013, *Westberg v. FDIC*, — F. Supp. 2d —, 2013 WL 681186 (D.C.D.C. 2013), found at App. 197.

(C)     **Related Cases:** This case has never been before any other court besides the District Court. The Westbergs are not aware of any other case involving substantially the same parties and the same or similar issues. There are thus no related cases.

i

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES ................................................................................... i

TABLE OF AUTHORITIES ................................................................. iv

GLOSSARY........................................................................................ viii

STATEMENT OF JURISDICTION....................................................... 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ...................... 2

PERTINENT STATUTES ..................................................................... 3

STATEMENT OF THE CASE............................................................... 4

STATEMENT OF THE FACTS RELEVANT TO THE ISSUES........... 6

SUMMARY OF ARGUMENT ............................................................. 9

ARGUMENT ...................................................................................... 10

I.    SUBSECTION (i) OF § 1821(d)(13)(D) ONLY BARS
      DECLARATORY RELIEF AGAINST THE FDIC REGARDING AN
      ASSET *IN ITS POSSESSION*, NOT AGAINST A PRIVATE PARTY
      THAT PURCHASED THE ASSET........................................... 10

      A.    The Plain Language Of Subsection (i) Limits Its Reach
            To The FDIC While Possessing The Asset At Issue ....... 14

      B.    The Possession Requirement Is Necessary To Avoid Turning
            Subsection (i) Into A Grant Of Immunity ..................... 15

      C.    An FDIC Declaration Of Rights Would Not Bind An Asset
            Purchaser ..................................................................... 21

      D.    The Westbergs' Declaratory Judgment Action Is Not
            Functionally Against The FDIC..................................... 23

ii

E.   The Majority Of Circuits To Address The Issue Have Held That Subsection (i) Does Not Extend To An Asset Purchaser .................. 25

F.   This Accords With The FDIC's Longstanding Position That An Asset Purchaser Is Not Protected By Subsection (i) ......................... 29

II.   IN ANY EVENT, THE WESTBERGS EXHAUSTED THEIR ADMINISTRATIVE REMEDIES BY FILING A CLAIM FOR PAYMENT WITH THE FDIC ..................................................................... 30

III.   DISMISSING THE WESTBERGS' SUIT FOR FAILURE TO FILE A DECLARATORY ADMINISTRATIVE CLAIM WHEN THE FDIC SPECIFICALLY INSTRUCTED THEM TO ONLY SUBMIT A MONETARY ONE IS A DENIAL OF DUE PROCESS ........................ 32

CONCLUSION ................................................................................. 36

CERTIFICATE OF COMPLIANCE .................................................... 37

CERTIFICATE OF SERVICE ............................................................ 38

ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*American Nat'l Ins. Co. v. FDIC,*
    642 F.3d 1137 (D.C. Cir. 2011)..................................................... 10, 11, 16, 21, 25

*Auction Company of America v. FDIC,*
    141 F.3d 1198 (D.C. Cir. 1998)..................................................................... 11, 16

*Bank of New York v. First Millennium, Inc.,*
    607 F.3d 905 (2d Cir. 2010) ................................................................................15

*Benson v. JPMorgan Chase Bank, N.A.,*
    673 F.3d 1207 (9th Cir. 2012) ............................................................... 25, 26, 28

*Butland v. Bowen,*
    673 F. Supp. 638 (D. Mass. 1987)......................................................................35

*Christopher v. Secretary of Health and Human Serv.,*
    702 F. Supp. 41 (N.D.N.Y. 1989) ......................................................................35

*FDIC v. McFarland,*
    243 F.3d 876 (5th Cir. 2001) ...................................................................... 25, 26

*Freeman v. FDIC,*
    56 F.3d 1394 (D.C. Cir. 1995)................................... 13, 14, 19, 20, 23, 28, 30, 34

*Gonzalez v. Sullivan,*
    914 F.2d 1197 (9th Cir. 1990) ...........................................................................34

*Henderson v. Bank of New England,*
    986 F.2d 319 (9th Cir.1993) ....................................................................... 16, 29

*Henrichs v. Valley View Development,*
    474 F.3d 609 (9th Cir. 2007) .................................................................. 26, 27, 28

*Authorities upon which we chiefly rely are marked with asterisks.

iv

*Home Capital Collateral, Inc. v. FDIC*,
  96 F.3d 760 (5th Cir. 1996) ...................................................................28

*Homeland Stores, Inc. v. Resolution Trust Corp.*,
  17 F.3d 1269 (10th Cir.1994) ...............................................................15

*Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*,
  43 F.3d 843 (3d Cir. 1994) ........................................................... 18, 19

*Mackey v. Lanier Collection Agency & Serv., Inc.*,
  486 U.S. 825 (1988) ..............................................................................12

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................... 34, 35

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*,
  28 F.3d 376 (3d Cir. 1994) .................................... 17, 18, 19, 20, 28, 35

*Placida Professional Center v. FDIC*,
  2013 WL 978271 (11th Cir. 2013) ................................................ 19, 20

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) ..............................................................................12

*Rodriguez v. U.S.*,
  480 U.S. 522 (1987) ..............................................................................12

*Rosa v. Resolution Trust Corp.*,
  938 F.2d 383 (3d Cir. 1991) .......................................................... 16, 29

*Sims v. Apfel*,
  530 U.S. 103 (2000) ....................................................................... 9, 31, 32

*Tellado v. IndyMac Mortgage Servs.*,
  707 F.3d 275 (3d Cir. 2013) ..................................................................27

*United States v. Jicarilla Apache Nation*,
  564 U.S. ----, 131 S. Ct. 2313, 180 L. Ed. 2d 187 (2011) ....................12

*United States v. Utah Construction & Mining Co.*,
  384 U.S. 394 (1966) ....................................................................22

*Village of Oakwood v. State Bank & Trust Co.*,
  539 F.3d 373 (6th Cir. 2008) ......................................................28

*WRH Mortgage, Inc. v. S.A.S. Associates*,
  214 F.3d 528 (4th Cir. 2000) ........................................................4

**Statutes**

12 U.S.C. § 1821 ...........................................................................3

12 U.S.C. § 1821(d) ..................................................... 15, 17, 31

12 U.S.C. § 1821(d)(2)(H) ..........................................................19

12 U.S.C. § 1821(d)(3)-(6) ..........................................................30

12 U.S.C. § 1821(d)(3) ........................................................ 19, 20

12 U.S.C. § 1821(d)(3)(A) ...........................................................22

12 U.S.C. § 1821(d)(4)(B)(i) ........................................................19

12 U.S.C. § 1821(d)(5)-(11) .........................................................27

12 U.S.C. § 1821(d)(5) ..................................................................20

12 U.S.C. § 1821(d)(5)(A)(i) ........................................................21

12 U.S.C. § 1821(d)(6)............................................... 1, 11, 20, 21

12 U.S.C. § 1821(d)(6)(A) ............................................................11

12 U.S.C. § 1821(d)(10)(A) .................................................. 19, 22

12 U.S.C. § 1821(d)(10)(B) .................................................. 19, 22

12 U.S.C. § 1821(d)(11)(A)...........................................................22

12 U.S.C. § 1821(d)(13)(D) .............. 1, 2, 4, 10-12, 16-20, 26-28, 30, 31, 33, 35-37

12 U.S.C. § 1821(d)(13)(D)(i) ............................ 9, 10, 12-15, 18, 19, 23, 26-28, 30

12 U.S.C. § 1821(d)(13)(D)(ii) ................................................. 12-14, 16, 17, 28, 29

12 U.S.C. § 1821(d)(14) ........................................................................................ 31

12 U.S.C. § 1821(e) ................................................................................................. 7

12 U.S.C. § 1821(j) ............................................................................................... 37

12 U.S.C. § 1823(e) ............................................................................................... 31

12 U.S.C. § 1825 ................................................................................................... 31

28 U.S.C. § 1291 ..................................................................................................... 1

28 U.S.C. § 2201(a) ........................................................................................... 3, 23

29 U.S.C. § 160(e) ................................................................................................ 32

**Rules**

Fed. R. Civ. P. 60(a) ............................................................................................... 1

**Other Authorities**

WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY (1994) ........................... 12

RESTATEMENT (SECOND) OF JUDGMENTS (1982) ............................................ 21, 22

# GLOSSARY

District Court:     United States District Court for the District of Columbia

FDIC:               Federal Deposit Insurance Corporation

FIRREA:             Financial Institutions Reform, Recovery, and Enforcement Act of 1989

Multibank:          Multibank 2009-1 RES-ADC Venture, LLC

RTC:                Resolution Trust Corporations

Westbergs:          Kim S. Westberg and Lavern V. Westberg

## STATEMENT OF JURISDICTION

The Westbergs pled subject matter jurisdiction under 12 U.S.C. §
1821(d)(6), but the District Court held jurisdiction was lacking based on its
conclusion that the Westbergs had failed to exhaust their administrative remedies
as required by 12 U.S.C. § 1821(d)(13)(D). This appeal is from the District Court's
dismissal for lack of jurisdiction. This Court has appellate jurisdiction pursuant to
28 U.S.C. § 1291. This is an appeal from a final order and judgment. The District
Court entered an order on January 29, 2013 disposing of all parties' claims. On
February 25, 2013, Multibank filed a motion seeking to alter or amend the
judgment to correct a scrivener's error pursuant to Fed. R. Civ. P. 60(a), which the
District Court granted that same day. The Westbergs timely filed a notice of appeal
on February 28, 2013.

1

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

1.      Whether the Westbergs' claim for declaratory relief against Multibank (the purchaser of their loan from the FDIC) is jurisdictionally barred under § 1821(d)(13)(D) because the Westbergs did not file an administrative claim for declaratory relief with the FDIC.

2.      Whether the *monetary* administrative claim that the Westbergs *did* file satisfied § 1821(d)(13)(D)'s administrative exhaustion requirement for their declaratory judgment claim.

3.      If the Westbergs' declaratory judgment claim is jurisdictionally barred by § 1821(d)(13)(D), whether the FDIC violated the Westbergs' due process rights by specifically directing them in the proof of claim form and instructions to only file a *monetary* claim, thereby leading the Westbergs into this jurisdictional trap.

## PERTINENT STATUTES

12 U.S.C. § 1821, Insurance Funds (*see* Addendum at 1)

28 U.S.C. § 2201(a), Creation of Remedy (*see* Addendum at 80)

## STATEMENT OF THE CASE

This is an appeal from the District Court's ruling on summary judgment that the Westbergs' declaratory judgment claim against Multibank was jurisdictionally barred by 12 U.S.C. § 1821(d)(13)(D). The FDIC repudiated the Westbergs' partially-funded home construction loan to avoid funding any more of it. Multibank then purchased the repudiated loan from the FDIC at a substantial discount. Upon learning of the assignment, the Westbergs immediately sought a declaration against Multibank regarding whether they were obligated to pay it given the FDIC's repudiation of the loan. They relied on the Fourth Circuit's holding in *WRH Mortgage, Inc. v. S.A.S. Associates*, 214 F.3d 528 (4th Cir. 2000), that a receiver's repudiation is a material breach of the loan agreement excusing counter-performance by the borrower, including repayment.

The District Court never reached the merits of the issue because it dismissed the Westbergs' declaratory judgment claim for lack of jurisdiction. It held the declaratory judgment claim was barred under § 1821(d)(13)(D) because the Westbergs had not exhausted their administrative remedies by first seeking a declaration from the FDIC.

The Westbergs filed the same declaratory judgment claim against the FDIC, but it was dismissed as moot based on the assignment to Multibank. The Westbergs' damages claim against the FDIC was dismissed for failure to state a

claim and the Westbergs elected not to replead it because the most they would get, if successful, was a worthless receiver's certificate.

The Westbergs find themselves in this jurisdictional trap because the FDIC specifically directed them in the proof of claim form and instructions to only file a *monetary* administrative claim.

## STATEMENT OF THE FACTS RELEVANT TO THE ISSUES

In May of 2008, the Westbergs obtained a construction loan from Silver State Bank in the amount of $1,318,000.00 for the purpose of constructing their retirement home in Gilbert, Arizona. Appendix ("App.") at 21.

The loan was memorialized in three contemporaneously executed documents:  (1) a Residential Construction Loan Agreement (the "Agreement"), dated May 20, 2008; (2) a Promissory Note, dated May 20, 2008, in the amount of $1,318,000.00; and (3) a Deed of Trust, recorded on May 28, 2009 with the Maricopa County Recorder's Office at No. 2008-0469788 (the "Deed of Trust"). *Id*. at 22. In reliance on the loan documents, Kim Westberg, a licensed residential contractor with the State of Arizona, commenced construction of the home. *Id*.

Silver State Bank paid out the first draw request in compliance with the Agreement in the amount of $171,510.95, which the Westbergs used to pay outstanding invoices for labor and materials in connection with the construction of the home. *Id*. at 22. In September of 2008, the Westbergs submitted a second draw consent form and a signed contractor's affidavit in accordance with the Agreement requesting that Silver State Bank disburse an additional $280,432.46 of the loan. *Id*. at 23.  Silver State Bank failed to pay the second draw request, or any subsequent amounts of the Loan. *Id*.

By letter dated September 5, 2008, the Westbergs were notified by the FDIC that Silver State Bank had been closed by the Nevada Financial Institution's Division and that the FDIC was appointed as receiver. *Id*. As of that date, the Westbergs had fully complied with all obligations under the terms of the loan documents, and have to this day continued to make monthly payments pursuant to the terms of the loan documents. *Id*.

By letter dated April 21, 2009, the FDIC notified the Westbergs that the FDIC, as receiver for Silver State Bank, and pursuant to 12 U.S.C. § 1821(e), had elected to repudiate the Agreement. *Id*. at 23. The Westbergs, in turn, timely submitted a proof of claim in writing requesting damages for such repudiation from the FDIC. *Id*.

By letter dated July 6, 2009, the FDIC sent the Westbergs a Notice of Disallowance of Claim, and advised them they had 60 days to file a lawsuit. *Id*. The FDIC also stated that the Westbergs were obligated to pay back all funds disbursed prior to the repudiation. *Id*. The FDIC issued a "Loan Payoff Statement" requesting payment totaling $216,482.16 as of 9/11/2009, including a "prepayment penalty" of $43,658.70. *Id*. at 24.

The Westbergs were unable to procure replacement financing based upon the recording of the Deed of Trust, which precluded any subsequent lender from obtaining a first position lien against the property. *Id*. They were forced to

7

liquidate assets to pay for the completion of the construction of the home. *Id*. at 24. After the filing of this lawsuit, on February 9, 2010, the FDIC sold the Westbergs' loan to Multibank, which also demanded that the Westbergs continue payments under the repudiated Agreement. *Id*. The Westbergs joined Muiltibank as a defendant on their declaratory judgment claim at that point. *Id*. at 24. The Westbergs have continued to make monthly payments to avoid Multibank foreclosing under the Deed of Trust. *Id*.

The Westbergs seek a declaratory judgment against Multibank to determine whether they have a continuing obligation to make monthly payments and otherwise perform under the loan documents in view of the FDIC's repudiation of the loan.

## SUMMARY OF ARGUMENT

The District Court erred in dismissing the Westbergs' declaratory judgment claim against Multibank under § 1821(d)(13)(D)(i). The statute only bars declaratory relief against the FDIC regarding an asset that it *continues to hold*. Since the Westbergs' loan had been assigned to Multibank, it was no longer held by the FDIC and § 1821(d)(13)(D)(i) was inapplicable.

Even if § 1821(d)(13)(D)(i) did apply, the Westbergs satisfied its administrative exhaustion requirement through the monetary administrative claim that they filed. This was sufficient under the Supreme Court's ruling in *Sims v. Apfel*, 530 U.S. 103 (2000).

If the Court concludes that § 1821(d)(13)(D) bars jurisdiction, the FDIC created this problem by specifically directing the Westbergs in the proof of claim form and instructions to only file a monetary claim. The FDIC essentially pushed the Westbergs into this jurisdictional trap. In so doing, the FDIC violated the Westbergs' due process rights. The remedy for such due process violation is to hold § 1821(d)(13)(D)(i) unconstitutional *as applied* to the Westbergs and allow their declaratory judgment claim to go forward.

## **ARGUMENT**

**I.    SUBSECTION (i) OF § 1821(d)(13)(D) ONLY BARS DECLARATORY RELIEF AGAINST THE FDIC REGARDING AN ASSET *IN ITS POSSESSION*, NOT AGAINST A PRIVATE PARTY THAT PURCHASED THE ASSET.**

The District Court's dismissal of the Westbergs' declaratory judgment claim for lack of jurisdiction is reviewed *de novo* as to legal issues. *See American Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court must also "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such fact determine jurisdictional questions." *Id*. The same *de novo* standard applies to the jurisdictional issues raised in Sections II and III *infr*a.

Two interlocking jurisdictional provisions in FIRREA are at issue. The first is the jurisdictional bar in § 1821(d)(13)(D)[1], which provides:

> *Except as otherwise provided in this subsection*, no court shall have jurisdiction over--
>
>> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

---

[1] Unless otherwise stated, all statutory section citations herein without an accompanying title designation are to Title 12 of the United States Code captioned "Banks and Banking."

10

> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (italics added). The "except as otherwise provided" clause refers to the jurisdictional grant in § 1821(d)(6)(A), which is the second provision. It authorizes a claimant to file suit in district court if the FDIC denies his or her administrative claim. *See American Nat'l*, 642 F.3d at 1141 ("§ 1821(d)(6)(A) is '[t]he only clause of the subsection that 'otherwise provide[s]' jurisdiction'") (quoting in part *Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998)). Sections 1821(d)(6)(A) and 1821(d)(13)(D) create an administrative exhaustion requirement because they condition jurisdiction on the plaintiff having filed an administrative claim with the FDIC. *See American Nat'l*, 642 F.3d at 1141 ("we have described §1821(d)(6) and § 1821(d)(13)(D) as setting forth a standard a 'standard exhaustion requirement'"); *Auction Co.*, 141 F.3d at 1200 ("These two subsections would seem to set up a standard exhaustion requirement: (d)(6)(A) routes claims through an administrative review process, and (d)(13)(D) withholds judicial review unless and until claims are so routed.").

As used in § 1821(d)(13)(D), the word "claim" does *not* include declaratory relief. Subsection (i) specifically distinguishes between a "claim" and "a determination of rights." 12 U.S.C. § 1821(d)(13)(D)(i). Any suggestion that "determination of rights" modifies or is offered as an example of a "claim" is belied by the word "or": it is a disjunctive used to "distinguish" things, such as

11

"expressing an alternative" and "syntactically setting two or more expressions in opposition to each other." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY at 413 (1994) (definition of "disjunctive"). "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings . . . ." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (interpreting phrase "injured in his business *or* property" in Clayton Act and holding "Congress's use of the word 'or' makes plain that 'business' was not intended to modify 'property,' nor was 'property' intended to modify 'business.'") (italics added). Construing "claim" to encompass "a determination of rights" would render the latter phrase superfluous. *See United States v. Jicarilla Apache Nation,* 564 U.S. ——, ——, 131 S. Ct. 2313, 2330, 180 L. Ed. 2d 187 (2011) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.") (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 837 (1988)).

Therefore, Subsection (ii) of § 1821(d)(13)(D) thus does not apply here because it is limited to a "claim," which does not include declaratory relief. 12 U.S.C. § 1821(d)(13)(D)(ii). Unlike subsection (i), subsection (ii) does not reference "a determination of rights." The exclusion of this language must be "presumed . . . purposeful[]" and taken to mean that subsection (ii) is not triggered by declaratory relief. *See Rodriguez v. U.S.*, 480 U.S. 522, 525 (1987) ("Where

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.") (internal citations, quotations, and brackets omitted).[2]

Subsection (i) of § 1821(d)(13)(D) is also triggered by "any claim or action for payment from . . . the assets of any depository institution for which the Corporation has been appointed receiver." *Id.*  This does not apply for the same reason that subsection (ii) is inapplicable: a "claim" does not encompass declaratory relief. Nor does declaratory relief involve an "action for payment." 12 U.S.C. § 1821(d)(13)(D)(i).

Therefore, the *only* possible bar to this action for declaratory judgment against Multibank is subsection (i)'s denial of jurisdiction for "an[] action seeking a determination of rights with respect to . . . the assets of any depository institution for which the Corporation has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)(i).

The Westbergs acknowledge that subsection (i) forecloses declaratory relief *against the FDIC and failed bank* absent exhaustion. In *Freeman v. FDIC*, 56 F.3d 1394, 1396 (D.C. Cir. 1995), this Court held that a borrowers' declaratory

---

[2] As the district court held, subsection (ii) of 12 U.S.C. § 1821(d)(13)(D) also does not apply "because the Westbergs do not challenge the FDIC's repudiation of their loan." (App. at 202 n.3)

judgment action against the FDIC regarding their loan was barred under subsection (i) because it "seeks a determination of rights with respect to an asset of a failed bank for which the FDIC serves as receiver—specifically, Madison's $740,000 loan to the Freemans upon which the FDIC seeks to foreclose." *Freeman*, 56 F.3d at 1400 (internal bracket and quotation marks omitted). "It is undisputed that the Freemans did not file . . . th[is] [declaratory] claim[] through the administrative claims process prior to their filing of this lawsuit." *Id*. "On its face, then, § 1821(d) bars any court from hearing the Freemans' claims." *Id*.

What *Freeman* did not address, and is critically at issue here, is whether subsection (i) forecloses declaratory relief, *not* against the FDIC or failed bank, but against *an asset purchaser*.

### A.     The Plain Language Of Subsection (i) Limits Its Reach To The FDIC While Possessing The Asset At Issue.

Subsection (i) is triggered by declaratory relief relating to the "assets of any depositing institution for which the corporation has been appointed receiver." 12 U.S.C. §1821(d)(13)(D)(1). That the FDIC must hold the "asset[]" inheres in this language. Once the FDIC sold the Westbergs' loan, it ceased being a receivership "asset[]" *Id.*

That explains why Congress expressly provided that subsection (i) also applies to assets that, although no longer held by the receivership, are still owned by the FDIC in its corporate capacity. *See Id*. (stating jurisdictional bar applies to

declaratory relief concerning "assets which the Corporation may acquire from itself as such receiver"). If subsection (i) generally applied to assets that the FDIC had assigned to others, there would have been no need to specify that the assets assigned to the FDIC in its corporate capacity are also covered. The addition of this provision makes clear that an assignment otherwise disables subsection (i).

### B.   The Possession Requirement Is Necessary To Avoid Turning Subsection (i) Into A Grant Of Immunity.

This Court and others have repeatedly held that § 1821(d)(13)(D)'s jurisdictional bar must be limited to claims susceptible of resolution through FIRREA's claims process. This is necessary to avoid "transforming FIRREA from an administrative exhaustion scheme into a grant of immunity, a result troubling from a constitutional perspective and certainly not the goal of FIRREA." *American Nat'l*, 642 F.3d at 1143. "And we doubt Congress intended to force claimants into a process incapable of resolving their claims." *Id*.; *see also Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010) ("Courts interpreting the broad language of § 1821(d)(13)(D)(ii) have universally concluded that this provision bars only claims that could be brought under the administrative procedures of § 1821(d), not any claim at all involving the FDIC."); *Homeland Stores, Inc. v. Resolution Trust Corp.,* 17 F.3d 1269, 1274 (10th Cir.1994) ("As a practical matter of statutory construction, . . . we proceed on the assumption that Congress intended the 'claims' barred by § 1821(d)(13)(D) to parallel those

15

contemplated under FIRREA's administrative claims process laid out in the greater part of § 1821(d)."); *Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 394 (3d Cir. 1991) ("Whatever its breadth, we do not believe that clause (ii) [of § 1821(d)(13)(D)] encompasses claims that are not susceptible of resolution through the claims procedure."); *Henderson v. Bank of New England,* 986 F.2d 319, 321 (9th Cir. 1993) (§ 1821(d)(13)(D) applies only to claims that are "susceptible of resolution through the claims procedure").

The goal is to construe §1821(d)(13)(D) and the claims process to have concurrent scope to avoid the constitutional dilemma of turning § 1821(d)(13)(D) into a grant of immunity. As this Court observed in *Auction Company*, there are two ways of achieving such alignment. The first is to interpret FIRREA's claim processing provisions broadly to encompass a claim. The second is to interpret § 1821(d)(13)(D) narrowly to avoid barring it. *See Auction Co.*, 141 F.3d at 1201 (recognizing these "two possible ways to produce such a harmonious reading").

Which approach to take depends in part on what language more easily bends to the claim. However, far more important is whether the FDIC is legally responsible for, or otherwise in a position to resolve with finality, the claim. If not, there is no point in routing the claim into the administrative claims process because the FDIC would be "incapable" of satisfying or resolving it. *American Nat'l*, 642 F.3d at 1143. In such event, the administrative claims process would "offer[] only

a pointless bureaucratic exercise." *Id*. Because of this, "[w]e . . . have only

construed the claims process broadly where either the failed depository institution

or the FDIC-as-receiver might be held legally responsible to pay or otherwise

resolve the asserted claim." *Id*.

With this background in mind, there is a misalignment between

§ 1821(d)(13)(D) and the claims process for declaratory relief. The Third Circuit

observed this in *National Union*. Subsection (i) bars jurisdiction for "any action

seeking a determination of rights with respect to . . . the assets of any depository

institution for which the Corporation has been appointed receiver." 12 U.S.C.

§ 1821(d)(13)(D)(i). At the same time, the claim provisions ostensibly only

allowed for a monetary claim. The repeated use of the words "pay" and "payment"

strongly imply this. *See* 12 U.S.C. §§ 1821(d)(2)(H) ("pay all valid obligations of

the insured depository obligation"), 1821(d)(4)(B)(i) ("settle all uninsured and

unsecured claims on the receivership with a final payment"), 1821(d)(10)(A) ("pay

creditor claims which are allowed by the Receiver"), 1821(d)(10)(B) ("pay

dividends on proved claims"). As the Third Circuit noted, it appears that "a 'claim'

or 'creditor's claim' is essentially *an action asserting a right to payment*." *National

Union*, 28 F.3d at 387 (italics in original).

Thus, "the terms 'claims' and 'creditors['] . . . claims' as used in §

1821(d)(3) denote a smaller class of actions than does the 'any action seeking a

determination of rights' language of § 1821(d)(13)(D)(i)." *Id*. It follows that

"National Union and Gulf's declaratory judgment action . . . would not be a 'claim'

addressed in the administrative claims procedure, but would be an 'action'

jurisdictionally barred by § 1821(d)(13)(D)." *Id*. at 388. A claimant "not asserting

a right to payment and . . . want[ing] only a declaration of rights against the failed

bank . . . [is] provided no administrative remedy or court access." *Id*. While

flagging this problem, the Third Circuit "le[ft] for another day the issue of whether

§ 1821(d)(3), (d)(5) and (d)(6) requires or permits the RTC to consider claims not

asserting a right to payment, such as National Union and Gulf's action for

declaratory judgment of rescission, in the administrative claims procedure of

FIRREA." *Id*. at 388 n.12.

However, not long thereafter, in *Hudson United Bank v. Chase Manhattan

Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994), the Third Circuit resolved

the issue. "This holding answers the question we expressly left open in *National

Union Fire Insurance Co. v. City Savings, F.S.B.,* 28 F.3d 376, 387 n.12 (3d

Cir.1994), as to the reach of § 1821(d)(13)(D)." *Id*. at 849. "By deciding that the

administrative claims procedures and the jurisdictional bar have concurrent scope,

we avoid the possibility raised in *National Union* that § 1821(d)(13)(D) could

become an independent and outright bar of jurisdiction rather than a mere

exhaustion requirement if § 1821(d)(13)(D) were to have broader reach than the administrative claims procedures." *Id*. (internal quotation marks omitted).

Citing the Third Circuit's ruling in *Hudson*, the Eleventh Circuit recently held in *Placida Professional Center v. FDIC*, 2013 WL 978271 (11th Cir.), that "a declaratory judgment action may be brought as an administrative claim." *Id.* at 6 n.9. This Court implicitly held the same in *Freeman*. "The Freemans were thus required to exhaust their administrative remedies before bringing their [declaratory judgment] claim[] to court, and by failing to do so, deprived the court of jurisdiction." *Freeman*, 56 F.3d at 1402.

But *Hudson*, *Placida* and *Freeman*'s recognition of a declaratory administrative claim was limited. Those cases involved declaratory relief *against the FDIC while possessing the asset*. None involved the separate and distinct issue presented here: whether the administrative claims process allows for declaratory relief *against an asset purchaser*.

This Court held in *American National* that the claims process only allows claims against the FDIC and the failed bank, not a third party. "Several factors convince us that only claims against depository institutions for which the FDIC has been appointed receiver can be processed by the administrative system set forth in FIRREA." *American Nat'l*, 642 F.3d at 1143. This Court explained:

> First, § 1821 (d)(5)(A)(i), entitled "Procedures for determination of claims: Determination period: In general," provides that "[b]efore the

19

end of the 180–day period beginning on the date any claim *against a depository institution* is filed with the [FDIC] as receiver, the [FDIC] shall determine whether to allow or disallow *the claim* " (emphasis added). FIRREA does not contain any other deadline for FDIC action for other types of claims. No other kinds of claims are ever specified in the provisions setting forth the administrative claims process. Rather, § 1821(d)(6), which establishes the availability of "agency review or judicial determination of claims," similarly governs only "claim[s] against a depository institution for which the [FDIC] is receiver," and subsequent claims process provisions refer simply to "claims." Furthermore, FIRREA authorizes the FDIC to allow and pay claims, *see* § 1821(d)(3)(A), (5)(B), (10)(A)–(B), and requires the FDIC to distribute "amounts realized from the liquidation or other resolution of any insured depository institution" in payment of claims, *see* § 1821(d)(11)(A). That such relief would be categorically inappropriate in cases not against a depository institution for which the FDIC is receiver strengthens our conviction that FIRREA's administrative claims process is available only to claims against depository institutions.

*Id.*

While the claim processing provisions can be stretched to allow for declaratory relief *against the FDIC and the failed bank* as occurred in *Hudson, Placida,* and *Freeman* - the same is not true for a declaratory judgment action against an asset purchaser. Even if the claim processing language could be bent to accommodate an asset purchase, it would be inappropriate to do so because "the claims process offers only a pointless bureaucratic exercise" as to a third party. *Id*. By contrast, declaratory relief against the FDIC or failed bank is not "pointless" because the FDIC will presumably honor what it declares.

Since administrative declaratory relief against Multibank would be "pointless," there is no reason to interpretively reshape the claims process to allow for it. Rather, concurrent scope can be achieved by narrowly construing subsection (i) to avoid barring declaratory relief against a third party. The logical way of doing this is to interpret "assets of any depository institution for which the Corporation has been appointed receiver" as meaning assets in the FDIC's possession. *Id*. Under this construction, § 1821(d)(13)(D)(i) does not apply to the Westbergs' suit against Multibank.

### C.     An FDIC Declaration of Rights Would Not Bind An Asset Purchaser.

In *Freeman*, this Court noted that the plaintiffs "could have filed claims seeking a determination by the FDIC of their rights and obligations under the various notes and agreements at issue." 56 F.3d at 1404. This is correct insofar as soliciting an *opinion* from the FDIC as to its view of the parties' rights. But such opinion would *not* have risen to the level of a formal declaratory judgment.

Only a court (which the FDIC indisputably is not) can issue a declaratory judgment with *res judicata* effect on the litigants' successors in interest. See 28 U.S.C. § 2201(a) ("any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration"); RESTATEMENT (SECOND) OF JUDGMENTS § 1 (1982) (only a "court" may issue a

judgment). Likewise, a ruling by an administrative agency is only accorded *res judicata* effect when the "agency [wa]s acting in a judicial capacity and resolve[d] disputed issues of fact properly before it which the parties . . . had an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421-22 (1966). The FDIC does not act in a "judicial capacity" when it summarily decides an administrative claim (typically, as here, by saying nothing more than the claim has been denied for "[f]ailure to prove claim to the satisfaction of the Receiver") and without employing traditional judicial procedures. Even less "judicial," the FDIC is both an adversary and decision-maker in the process. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 84 *cmt. b* (administrative agency ruling only accorded *res judicata* effect if "procedures substantially similar to those used in courts" employed and not where the decision is "arrived at by what may be called executive procedure").

Thus, even assuming the impossible—that the Westbergs foresaw assignment of the loan, knew what specific legal and equitable rights the as-yet-unknown assignee would claim and specific arguments it would make in support thereof, and requested a determination of rights in advance addressing these issues—the process would *not* have prospectively resolved the dispute because the FDIC's opinion would *not* have bound Multibank.

22

## D.    The Westbergs' Declaratory Judgment Action Is Not Functionally Against The FDIC.

*American National* involved a damages claim against an asset purchaser and the question was whether such claim was barred under § 1821(d)(13)(D).  This Court recognized that the triggers in subsections (i) and (ii) are different and analyzed them separately. It found subsection (ii) inapplicable because it "bars only claims that related to an act or omission of the failed bank or the FDIC—as receiver—and appellant's suit is simply not a 'claim' under FIRREA." 642 F.3d at 1142. The plaintiff's damages claim did not qualify as a "claim" under Subsection (ii) because it was not resolvable in the administrative claims process that is limited to claims against the FDIC and does not allow for demands against an asset purchaser.  This Court held that "'claim' is a term of art that encompasses only demands that are resolvable through the administrative process set out by FIRREA." *Id.* It likewise found subsection (i) inapplicable because "the mere fact that JPMC now owns assets that Washington Mutual once owned does not render this suit one against or seeking a determination of rights with respect to these assets." *Id.*

Attempting to reconcile its holding with the Sixth Circuit's decision in *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008), this Court held that, "Where a claim is functionally, albeit not formally, against a

depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process." *Id.* At 1144.

The District Court below held that the Westbergs' declaratory judgment claim against Multibank was "functionally" against the FDIC because Multibank was repeating the payment demand made by the FDIC. However, nothing obligated Multibank to follow lock-step. Multibank now held the loan and it was free to interpret the legal effect of repudiation differently, but it chose not to and demanded on threat of foreclosure that the Westbergs continue to perform under the loan documents. Thus, it was not the FDIC's repudiation, but rather Multibank's discretionary call about how to interpret and respond to it after acquiring the loan that necessitated declaratory relief against Multibank.

It is critical to recognize that the Westbergs do *not* challenge the FDIC's repudiation of the loan in this action, which they concede was within its authority, nor challenge the FDIC's interpretation of the legal effect of such repudiation, which is irrelevant at this point as a result of it no longer holding the loan. What it challenges is the optional position taken by *Mutlibank* and the demands it has made on the Westbergs based thereon. The suit against Multibank was only necessary because of the decisions *it made* and actions *it took* in response to the FDIC's act of repudiation.

The mere fact that actions by the FDIC lie in the background of this dispute with Multibank does not make it a "claim" against the receivership estate subject to these jurisdictional provisions. As explained in *American National*, simply because the FDIC's conduct forms "one link in the causal chain connecting . . . [the assignee's] wrongdoing with the . . . [plaintiff's] injuries is insufficient to transform the complaint into one against the FDIC." *American National*, 624 F.3d at 1144. Plaintiffs seek a declaration of rights based on *Multibank's* assertion of rights in the repudiated loan, *not* based on the FDIC's prior assertion. If only the FDIC's prior assertion were at issue, there would no need for declaratory relief because it no longer holds the loan. What necessitates this action is *Multibank's* conduct: it is not being sued for what the FDIC asserted in the past, *but for what it asserts now*.

### E.  The Majority Of Circuits To Address The Issue Have Held That Subsection (i) Does Not Extend To An Asset Purchaser.

Three circuit decisions address the issue of whether § 1821(d)(13)(D) bars declaratory relief against an asset purchaser. *See Henrichs v. Valley View Development*, 474 F.3d 609, 614-15 (9th Cir. 2007); *FDIC v. McFarland*, 243 F.3d 876, 887 n.42 (5th Cir. 2001); *Tellado v. IndyMac Mortgage Servs.*, 707 F.3d 275, 279 (3d Cir. 2013).

*Henrichs* and *McFarland* are closest on point because they specifically address the applicability of subsection (i) to declaratory relief against the asset

purchaser. *See Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1212 (9th

Cir. 2012) ("In context, however, it is clear that *Henrichs* discussed only the first

prong of FIRREA's jurisdictional bar contained in § 1821(d)(13)(D)(i)."); *id.* at

1213 ("As in *Henrichs,* the *McFarland* court did not distinguish between the

subsections of FIRREA's jurisdictional bar, but it is clear the court was referring to

subsection (i).").

The Ninth Circuit held in *Henrichs*, and the Fifth Circuit held in *McFarland*,

that subsection (i) does not bar declaratory relief against an asset purchaser

because the FDIC no longer holds the asset as required for subsection (i) to apply.

*See Henrichs*, 474 F.3d at 614 ("At the time of the state court litigation, the FDIC

had no interest in the note because it had already assigned the note. Although

Henrichs attempts to paper over this fact by claiming that he stepped into the shoes

of the FDIC for the purposes of the state court litigation, the statute does not reach

assignees of assets once owned by the FDIC."); *McFarland*, 243 F.3d at 887 ("It

would be absurd for us to interpret section 1821(d)(13)(D) as assignable to the

current holder, Joslin. The claim procedures articulated in 12 U.S.C. § 1821(d)(5)-

(11) are predicated on the FDIC's possession of the property in question. When the

FDIC relinquishes ownership, the procedures governing its role as a receiver no

longer apply to the property.").

*Tellado* involved both declaratory and damage claims against the asset purchaser. Without distinguishing between the two claims, or the two subsections of § 1821(d)(13)(D), the Third Circuit held that the "entirety" of the plaintiffs' action was barred by subsection (ii) because it related to the acts and omissions of the failed bank in not providing the loan documents in Spanish to the borrowers. *Tellado*, 707 F.3d at 279-81. Citing to this Court's ruling in *American National*, the Third Circuit held that because "the Tellados' claim is functionally against IndyMac, it is a claim within the meaning of FIRREA's administrative process. The Tellados cannot bypass the requirements of FIRREA by bringing the claim against OneWest." *Id*. at 281.

The Third Circuit correctly dismissed the monetary claim under subjection (ii), but should have analyzed the declaratory claim separately under subsection (i). Assuming the declaratory claim was not a veiled damages claim, the Third Circuit should not have dismissed it. The Third Circuit latched on to the line of subsection (ii) cases correctly dismissing a damage claim against an asset purchaser based on alleged misconduct by the failed bank or FDIC without analyzing whether subsection (ii) even applied to declaratory relief. The Third Circuit relied heavily on this Court's ruling in *American National*, but it involved a claim for damages, not declaratory relief.

27

Damage claims against an asset purchaser premised on alleged misconduct by the failed bank or the FDIC have consistently been held jurisdictionally barred by subsection (ii) because they involve "a[] claim relating to an act or omission of such institution or the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(D)(ii). *See, e.g., Benson*, 673 F.3d at 1212 (holding part of Ponzi scheme investors' damage claim premised on failed bank's conduct barred by subsection (ii) of § 1821(d)(13)(D) for failure to exhaust administrative remedies); *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386-86 (6th Cir. 2008) (dismissing suit by former customers of failed bank to recover uninsured deposits from assuming bank pursuant to subsection (ii) of § 1821(d)(13)(D) because the depositors had not filed administrative claims with FDIC)); *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 763 (5th Cir. 1996) ("Home Capital's claim against RTC Receiver for its actions in negligently servicing Home Capital's loans and breaching the Agreement comes within the language of § 1821(d)(13)(D)(ii), as a 'claim relating to any act or omission of . . . the Corporation as receiver'").

Similarly, the cases dismissing declaratory judgment actions *against the failed bank or FDIC—see, e.g., Freeman*, 56 F.3d at 1399 (declaratory relief against FDIC); *National Union*, 28 F.3d at 385 (declaratory relief against RTC)— are inapplicable in determining whether subsection (i) forecloses declaratory relief against an asset purchaser.

**F.    This Accords With The FDIC's Longstanding Position That An Asset Purchaser Is Not Protected By Subsection (i).**

The FDIC's longstanding position is that subsection (i) of § 1821(d)(l3)(D) does not apply to an asset purchaser. It was a party in *Henrichs* and, in its brief successfully opposing plaintiff's petition for a writ of certiorari from the Supreme Court, stated the following:

> . . . As the court of appeals correctly concluded, Section 1821(d)(l3)(D) applies only in an action against the FDIC.  It does not apply in an action . . . against a private party who owns an asset that was formerly held by an FDIC receivership, particularly when the receivership has since terminated.
>
> Section 1821(d)(l3)(D) is designed to preserve the integrity of the administrative claims process established by FIRREA. It therefore "bars judicial review of any non-exhausted claim * * * which is 'susceptible of resolution through the claims procedure.'"*Henderson* v. *Bank of New England,* 986 F.2d 319, 321 (9th Cir.) (quoting *Rosa* v. *RTC,* 938 F.2d 383,394 (3d Cir.), cert. denied, 502 U.S. 981 (1991), cert. denied, 510 U.S. 995 (1993). But Section 1821(d)(l3)(D) does not apply to claims that are not susceptible of resolution through the administrative procedure, such as claims against a private party who holds an asset that was once held by an FDIC receivership, particularly when the receivership has terminated.  In that circumstance, there is no administrative claims procedure to exhaust, because that procedure governs only claims against the FDIC receivership. See 12 U.S.C. § 1821(d)(3)-(6) and (10).

App. 162.

Consistent with its position in *Henrichs*, the FDIC insisted on the following language in its loan sale agreement with Mulitbank disavowing the applicability of subsection (i) to an asset purchaser:

29

The Company [Multibank] shall be entitled to assert (and claim the benefit of) the statute of limitations established under 12 U.S.C. § 1821(d)(14). The Company acknowledges and agrees, however, that the assignment of any Loan . . . shall not constitute the assignment of any other rights, powers or privileges granted to the Initial Member [FDIC] pursuant to the provisions [sic] Federal Deposit Insurance Act, including those granted pursuant to 12 U.S.C. § 1821(d), 12 U.S.C. § 1823(e) and 12 U.S.C. § 1825, all such rights and powers being expressly reserved by the Initial Member; *nor shall the Company assert or attempt to assert any such right, power or privilege in any pending or future litigation involving any Loan transferred or purchased hereunder.*

App. 102 (italics added).

## II.   IN ANY EVENT, THE WESTBERGS EXHAUSTED THEIR ADMINISTRATIVE REMEDIES BY FILING A CLAIM FOR PAYMENT WITH THE FDIC.

In *Freeman,* this Court held that subsection (i) of § 1821(d)(13)(D) barred jurisdiction for plaintiffs' injunctive and declaratory relief claims against the FDIC because they had not previously filed an administrative claim. *Freeman*, 56 F.3d at 1399. The difference here is that Westbergs *did* file an administrative claim. While it was one for damages, that was all they could file: they could not have obtained a formal declaratory judgment at the administrative level that would have bound Multibank.

The Westbergs not including a request for declaratory relief with their damages claim also does not constitute a failure to exhaust administrative remedies because they were not required to raise every issue at the administrative level with their claim (again, in *Freeman*, no claim at all was filed). The Supreme Court

30

considered the question of "issue exhaustion" (*i.e.*, filing a claim below, but failing to raise a particular issue in the claim) in *Sims*. It noted that some statutes and regulations—such as the one governing appeals from the National Labor Relations Board, which provides that "no objection that has not been urged before the Board . . . shall be considered by the court"—expressly require issue exhaustion generally have occurred at the administrative level before judicial review may properly proceed. *Sims*, 530 U.S. at 108 (quoting 29 U.S.C. § 160(e)). However, the Social Security Act involved in *Sims* did not include an issue exhaustion requirement, stating only that there must be a "final decision" on an administrative claim for judicial review. *Id.* at 106. Nor was there any regulation imposing such a requirement. *Id.* at 111. The Supreme Court then noted that "we have imposed an issue exhaustion requirement even in the absence of a statute or regulation," *id.* at 108, but explained that it has done so only when the administrative proceeding was "adversarial" in nature. *Id.* at 109. "Where, by contrast, an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker." *Id.* at 110. Because "Social Security proceedings are inquisitorial rather than adversarial," *id.* at 111, "we hold that a judicially created issue-exhaustion requirement is inappropriate." *Id.* at 112.

As in *Sims*, nothing in § 1821(d)(13)(D) or elsewhere in subsection (d) of the statute imposes any issue exhaustion requirement on judicial review, nor does

31

there appear to be any administrative regulation to this effect. Thus, the question is whether a common law issue exhaustion requirement should apply. There was no adversarial process below whereby the Westbergs and the FDIC articulated opposing positions to sharpen the issues for resolution by an administrative law judge, nor even an inquisitorial process whereby an administrative law judge investigated the facts and developed arguments both for and against a particular outcome. Rather, all that occurred was that the Westbergs submitted a claim to the FDIC, which claim the FDIC summarily denied. No administrative law judge was even involved in the process, which was not remotely adjudicative.

As a result, issue exhaustion does not apply and the Court may consider issues not raised at the administrative level, including whether the FDIC's repudiation of the loan discharged the Westbergs' performance obligations thereunder.

## III.   DISMISSING THE WESTBERGS' SUIT FOR FAILURE TO FILE A DECLARATORY ADMINISTRATIVE CLAIM WHEN THE FDIC SPECIFICALLY INSTRUCTED THEM TO ONLY SUBMIT A MONETARY ONE IS A DENIAL OF DUE PROCESS.

The FDIC's claim form instructions stated that only a claim for monetary damages could be filed by the Westbergs. Specifically, it instructed: "This form is being sent to you in the event you believe the failed institution owes you *funds . . . .*  If the institution does not currently owe you any *money*, it is not necessary for you to complete this form." App. 60. (italics added). It directed the

Westbergs to provide a "[w]ritten dollar amount of the claim" and "[t]otal amount of claim." *Id*. Moreover, it stated such monetary damages had to relate to the provision of "goods" or "services" to the "failed institution" in order to be recoverable. *Id*. The claim form itself stated the claim had to arise from a "debt" and requested an "[A]mount of Claim" and a "Total." App. at 59. There was no mention anywhere of any ability on the part of the Westbergs to seek any other type of relief, nor any space to describe a request for non-monetary relief. *Id.* And there is no reason for this Court to conclude that the Westbergs had non-monetary recourse available to them at the administrative level—much less that they were derelict in failing to avail themselves of it. Certainly any reasonable person reading the claim form and instructions would understand that only monetary damages might be requested and awarded at the administrative level.

In *Freeman*, this Court observed that if the FDIC's communications with a borrower "did not apprise the[m] . . . of their opportunity to pursue their claims through the administrative claims process," and the borrower did not file an administrative claim for that reason, "serious due process concerns" would arise from application of the judicial bar of Section 1821(d)(13)(D). *Freeman*, 56 F.3d at 1403 n.2. Of course, "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting in part *Mullane v.*

33

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Despite flagging the potential constitutional concern, the D.C. Circuit did not resolve it simply because "the Freemans do not make a due process argument based on lack of notice of the claims process." *Id*. Were this Court otherwise inclined to rule that either subsection in § 1821(d)(13)(D) required the Westbergs to somehow pursue their declaratory judgment claim at the administrative level, then it would need to resolve the due process issue left unanswered in *Freeman*.

Here, the FDIC's claim form and instructions effectively resolve the issue, for they seem, if anything, *calculated to deprive* the Westbergs of the opportunity to raise administratively the declaratory judgment claim. They specifically instructed the claimant to file only a monetary claim, making plain that a declaratory relief claim such as the one at issue would not be entertained. A reasonable person reading these documents would have no inkling that a non-monetary claim might be brought against FDIC administratively, much less that it would need to be brought against FDIC administratively on pain of disabling judicial relief otherwise available against a later assignee. *Mullane* requires the best notice practicable under the circumstances; suffice it to say that the standard was not remotely satisfied here. *See Gonzalez v. Sullivan,* 914 F.2d 1197, 1203 (9th Cir. 1990) (notice violated due process because it was "sufficiently misleading that it introduces a high risk or error"); *Butland v. Bowen*, 673 F. Supp. 638, 641

(D. Mass. 1987) ("Notice that affirmatively misleads in this fashion clearly violates the Constitutional guarantee of due process."); *Christopher v. Secretary of Health and Human Serv*., 702 F. Supp. 41, 43 (N.D.N.Y. 1989) ("even a notice which is merely ambiguous may violate an applicant's due process rights . . . [because] [i]ts very ambiguity may cause it to be misleading").

Because the notice of the administrative claims process was constitutionally deficient, the bar of § 1821(d)(13)(D) could not possibly apply. As the Third Circuit noted in *National Union*, the solution is to "deem application of § 1821(d)(13)(D) unconstitutional as applied in th[is] case, and take jurisdiction over the case." *National Union*, 28 F.3d at 392. That is what the Eleventh Circuit recently did in *Placida*. Following the Third Circuit's advice in *National Union*, it held that: "As applied to this case, barring judicial review of Placida's properly exhausted declaratory judgment claim, whether pursuant to § 1821(j) or § 1821(d)(13)(D), would violate Placida's due process rights and render FIRREA's application unconstitutional. We must construe FIRREA so as to avoid constitutional difficulties, so we conclude that the district court had subject matter jurisdiction over Placida's declaratory judgment claim." *Placida*, 2013 WL 978271, at *8 (internal case citation omitted).

## CONCLUSION

For the foregoing reasons, the Westbergs ask this Court to vacate the District Court's judgment of dismissal and remand this case to the District Court to decide the claim for declaratory relief against Multibank on the merits.

RESPECTFULLY SUBMITTED this 15th day of July, 2013.

TIFFANY & BOSCO, P.A.


By  s/ Christopher A. La Voy
Christopher A. LaVoy, Az. Bar No. 016609
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,870 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font size and Times New Roman type style.


By  s/ Christopher A. La Voy
Christopher A. LaVoy, Az. Bar No. 016609
Attorney for Appellant


Dated: July 15, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of July, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By  s/ Christopher A. La Voy
Christopher A. LaVoy, Az. Bar No. 016609
Attorney for Appellant


July 15, 2013
       Date